IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:20-cv-00506 |
| MARY ELLEN REED a/k/a MARY ELLEN REYNOLDS a/k/a MARY ELLEN CLARK, JAMES TERRENCE REED and RUBY ANN BESS REED, | ) ) ) ) ) ) | Judge Aleta A. Trauger |
| Defendants. | ) | |

## MEMORANDUM

Before the court is the Motion for Summary Judgment (Doc. No. 44) filed by defendant Mary Ellen Reed (hereinafter, "Ellen Reed"), which is opposed by her co-defendants, James Terrence Reed and Ruby Ann Bess Reed (collectively referred to herein as "Mr. and Mrs. Reed"). For the reasons set forth herein, the motion will be denied.

## I. BACKGROUND

The Prudential Insurance Company of America ("Prudential") filed a Complaint in Interpleader (Doc. No. 1) on June 17, 2020, alleging that it issued group life insurance policy number G-46767 to the Metropolitan Government of Nashville and Davidson County (the "Plan"), under which Jesse Reed (the "decedent") received life insurance and accidental death and dismemberment coverage. Prior to his death, the decedent designated his wife, Ellen Reed, as the sole beneficiary under the Plan. The decedent died in March 2018. (*See* Certificate of Death, Doc. No. 1-3.)

As a result of the decedent's death, Plan death benefits in the amount of $200,000 (the "Death Benefit") became due and payable to the beneficiary or beneficiaries, and Prudential does not dispute liability in that regard. Ellen Reed submitted a Beneficiary Statement on April 8, 2018, claiming entitlement to the Death Benefit. (Doc. No. 1-4.) However, as of the date of the Interpleader Complaint, the decedent's death was still being investigated as a homicide, and Ellen Reed had not been ruled out as a suspect. (Complaint ¶¶ 10. 13.) These facts are undisputed. (*See* Doc. No. 52 ¶¶ 3, 5.)

Under Tenn. Code Ann. § 31-1-106(b), "[a]n individual who feloniously and intentionally kills the decedent forfeits all benefits with respect to the decedent's estate." Further, the "felonious and intentional killing of the decedent . . . [r]evokes any revocable . . . [d]isposition or appointment of property made by the decedent to the killer in a governing instrument." *Id.* 31-1-106(c)(1)(A). In that event, the "[p]rovisions of a governing instrument are to be given effect as if the killer disclaimed all provisions revoked by this section." *Id.* § 31-1-106(e). In light of this provision, Prudential understood that, if Ellen Reed is determined to have "feloniously and intentionally" killed her husband, she will be considered to have forfeited and disclaimed any right to the Death Benefit, in which event the decedent's parents, Mr. and Mrs. Reed, as the decedent's next of kin, would be entitled to the Death Benefit under the terms of the Plan. (Compl. ¶¶ 15–20.)

Because Prudential could not determine factually or legally who was entitled to the Death Benefit, it filed this lawsuit naming Ellen Reed and Mr. and Mrs. Reed as defendants and demanding that they "litigate the claims between themselves for the Death Benefit"; that they settle the issue among themselves or, upon their failure to do so, that the court determine to whom the Death Benefit should be paid; that Prudential be permitted to deposit the amount of the Death

Benefit, plus applicable interest, into the court to be paid out as the court directs; and that Prudential be discharged from any further liability. (Compl. at 5–6.)

In December 2020, the court granted Prudential's Amended Motion to Deposit Funds and for Interpleader Relief, entered the parties' Agreed Order directing Prudential to deposit the Death Benefit with the court and discharging it from further liability, and, upon its having done so, terminated Prudential as a party. (Doc. Nos. 25, 27, 28, 29.)

The docket reflects that the parties conducted, or attempted to conduct, discovery over the course of the next several months. However, in November 2021, following a case management conference with the parties during which the parties represented that the Tennessee Bureau of Investigation ("TBI") was still investigating the decedent's cause of death and that Ellen Reed was still a suspect, the court entered an order staying this case pending the completion of the TBI's investigation, pursuant to the parties' agreement. (Doc. No. 43.)

This case remained dormant until April 2023, when Ellen Reed filed her Motion for Summary Judgment, supporting Memorandum of Law, Statement of Undisputed Material Facts, and supporting evidentiary material. (Doc. Nos. 44–45.) In light of that filing, despite an absence of evidence regarding the status of the TBI's investigation, the court lifted the stay. (Doc. No. 47.) Mr. and Mrs. Reed thereafter filed their Response in Opposition to the Motion and supporting Memorandum, a Response to Ellen Reed's Statement of Undisputed Material Facts and their own Statement of Additional Facts, and additional evidentiary material. (Doc. Nos. 50–52.) Ellen Reed filed a Reply and a Response to the Statement of Additional Facts, as well as additional evidentiary material. (Doc. Nos. 53, 54.) In addition to opposing summary judgment for Ellen Reed, Mr. and Mrs. Reed assert that they are entitled to summary judgment under Federal Rule of Civil Procedure 56(f).

## II. EVIDENCE IN THE RECORD

Ellen Reed moves for summary judgment on the basis that there is no evidence that she killed the decedent, much less evidence that she *intentionally* killed him. In support of that assertion, she points to Mr. and Mrs. Reed's deposition testimony and discovery answers, which establish that they have no personal knowledge regarding their son's death and that they defer to "any evidence that the Tennessee Bureau of Investigation or other criminal investigators may have to support their identification of Mary Ellen Reed as a suspect." (*See, e.g.*, 45-5, at 3.) The depositions and interrogatory answers of Mr. and Mrs. Reed, however, are not the only evidence in the record.

Other evidence indicates that Ellen Reed and the decedent went to their lake house on Woods Cove in Humphreys County near the Tennessee River around Friday, March 3, 2018, with plans to spend the weekend there. (*See* Doc. No. 53-5.) According to her April 22, 2023 Declaration, Mary Lanius, a former neighbor, observed Ellen Reed and her husband outside their house around 10:00 or 10:30 the night of March 5, 2018. (Doc. No. 50-1 ¶ 3.) Lanius allegedly heard noises that suggested to her that "objects were being thrown" and the Reeds were engaged in a physical fight. (*Id.*) She could "hear them yelling and it was obvious that Mary Ellen Reed was mad, and she pushed Jesse Reed and slammed the door to the house as she went inside." (*Id.*)[1]

---

[1] Lanius added additional details in a statement to a detective with the Humphreys County Sheriff's Office ("HCSO") a month later, on May 30, 2023. According to an Incident Supplement Report, Lanius claimed that, on the night Jesse Reed disappeared, she heard "loud crashing sounds" and "a woman's voice yelling profanities." (Doc. No. 55-8, at 1.) She further stated that, while she was watching the Reeds' back porch from her bedroom window, she saw Ellen Reed "aggressively lunge towards Jesse and knock him down by either shoving or hitting him around the chest area," after which Ellen Reed went back into the house, slamming the door. (*Id.*) Lanius allegedly later saw the glow of a cigarette on the porch, which she believed to be Jesse Reed's. (*Id.* at 1–2.)

This statement is a dramatic departure from Lanius's first police statement. According to notes from an interview conducted by an HCSO detective on March 15, 2018, Lanius reported that

The TBI Investigative Report dated March 14, 2018 states that, on March 6, 2018 at approximately 1:12 a.m., another neighbor placed a 911 call on Ellen Reed's behalf, to report that Ellen Reed's Jeep Cherokee had "traveled off into the water on Bluff Point Lane in Waverly, Tennessee" and that Ellen Reed claimed that her husband had been operating the vehicle and was in the vehicle when it entered the water. (Doc. No. 50-2, at 1.) An Affidavit in Support of Search Warrant for the decedent's phone states that, according to the 911 call, Reed was partially clothed and wet when she appeared at the neighbor's house. (Doc. No. 50-3, at 3.)

The same Affidavit states that Humphreys County Detective Brian Baker interviewed Ellen Reed at approximately 4:00 a.m. the morning of March 6, 2018. She told him that she and the decedent decided to take a drive at approximately 11:00 p.m. the night of March 5, 2018 on the "trails" near their residence and that, when they left, the decedent was driving Ellen Reed's Jeep Cherokee. Ellen Reed "declared that she woke up after lying in the roadway on Bluff Point Lane and saw the tail lights of her Jeep Cherokee in the Tennessee River." (Doc. No. 50-3, at 3.) She told investigators she did not remember anything that happened during the two-hour period between when they left the driveway of their lake house at 14 Woods Cove around 11:00 p.m. and 1:00 a.m. when she woke up in the roadway approximately .3 miles away. (*Id.* at 4.) She did, however, remember "being in the water, being wet, and laying on the bank." (*Id.*)

After waking up, she "went to a nearby residence where she believed she broke a window to try to get warm." (*Id.* at 3.) "A wet pair of blue jeans and woman's feminine pad" were later located at 39 Bluff Point Lane. (*Id.* at 3.) Ellen Reed told the detectives that she then walked up to 35 Woods Cove, where she made contact with the neighbor who called 911. (*Id.* at 4.) She told the

---

she had seen "Jesse and Ellen in the earlier week outside smoking but had not seen or heard anything out of the ordinary." (Doc. No, 53-1.) She "described them as 'sweet' people" and reportedly "never observed them fight or argue." (*Id.*)

police that her purse and its contents, including her cell phone, were missing, but these items were later found on Bluff Point Lane near where her Jeep went into the water, and all of them were dry. Other items were recovered in the area that Reed identified as hers, including several fleece blankets, and these items were dry as well. (*Id.*)

According to the TBI Investigative Report, the Jeep Cherokee was recovered from the water with its windows down, doors unlocked, the back hatch open, and Ellen Reed's keys in the ignition. The passenger seat was reclined, one of the rear passenger 60/40 split seats was down, and a cell phone (later determined to be the decedent's) was located in the glove compartment. (Doc. No. 50-2, at 1.) The decedent's body was not in the Jeep. (*See* Doc. No. 50-4 ¶ 4.)

The search warrant Affidavit further reported that Ellen Reed had given "inconsistent statements" to investigators, including first stating that she had not taken the medication Soma the night of the incident but, twelve hours later, stating that she had. (Doc. No. 50-3, at 5.) She purportedly told paramedics arriving at the scene that her husband was seriously injured but later denied that she made such a statement. (*Id.*; *see also* Doc. No. 50-5, at 1 (paramedic's sworn statement that Ellen Reed told him she "was able to get out of the car but she couldn't get her husband out because he was too 'severely injured' and couldn't get out himself").) In addition, some of her statements were apparently "inconsistent" with provable facts. She stated that the decedent had been driving her Jeep all weekend, but security camera footage from a nearby liquor store, time-stamped March 5, 2018 at 2:15 p.m., showed the decedent getting out of the *passenger* seat of the vehicle to go into the store. (*Id.*) And she told detectives that she and the decedent never argued or fought, but the Cheatham County Sheriff's Office had a Domestic Troubles report on

file for the couple. (*Id.*)[2]

Following a polygraph examination on March 9, 2018, Ellen Reed refused to answer further questions and requested an attorney. (Doc. No. 50-6, at 1.)

Efforts over the next several days to locate and retrieve the decedent's body in the area near where the Jeep went into the river were unsuccessful. However, on March 17, 2018, two fisherman came across the decedent's body in a cove of the Tennessee River approximately one-half mile east, and upstream, of the place where the Jeep went into the water. (Doc. No. 50-4 ¶ 7; Doc. No. 50-10 ¶¶ 3–5.) There is, as yet, no expert evidence in the record to explain whether or how a dead body could move upstream in that portion of the Tennessee River in a high-water stage.

The Report of Investigation by County Medical Examiner states that the decedent's type of death is "suspected homicide" and identifies the cause of death as drowning, with "[b]lunt force injuries" as the contributory cause of death. (Doc. No. 45-2, at 1.) The manner of death "[c]ould not be determined." (*Id.*) The Autopsy Report attached to the Report of Investigation identifies the evidence of blunt force injuries as including "[h]emorrhage in right temporal and right occipital scalp," "[b]ilateral subdural hemorrhage," "[f]ocal paravertebral hemorrhage," and "[c]ontusion, right side back." (*Id.* at 2.) The Toxicology Report showed that the decedent's blood alcohol concentration was .305 g/100mL. (Doc. No. 53-12.)

Ellen Reed has been deposed in this case. Upon the advice of counsel, Ellen Reed stated, in response to every question posed during her deposition, "I wish to invoke my Fifth Amendment right." (*See* Doc. No. 50-9, *passim*.) Counsel for Mr. and Mrs. Reed ultimately suspended the deposition, based on the representation of counsel that Ellen Reed would not provide a substantive

---

[2] The decedent's brother also attested that the couple had a history of verbal and physical altercations. (Doc. No. 50-4 ¶ 9.)

answer to any question. (*Id.* at 17.) Likewise, in response to Interrogatories and Requests for Admission, Ellen Reed stated only, "Upon advice of Counsel, I am asserting my Fifth Amendment right against self-incrimination." (*See generally* Doc. Nos. 50-7, 50-8.)

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that, "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At the summary judgment stage, the court does not engage in "jury functions," such as "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255). Rather, the question for the court is whether a reasonable fact finder could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury [or other fact finder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV.   DISCUSSION

An insurance policy is a contract between the policy owner and the insurance company. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). Accordingly, an insurance company's obligation to pay proceeds under a policy is generally governed by Tennessee contract law. *See, e.g.*, *Est. of Lane v. Courteaux*, No. M2016-0060-9COA-R-3CV, 2017 WL 776101 (Tenn. Ct. App. Feb. 28, 2017). Generally, under contract law, a named beneficiary of a life insurance policy is presumptively entitled to its proceeds. *See, e.g.*, *Davis v. Combes*, 294 F.3d 931, 936 (7th Cir. 2002) (applying Illinois law); C*zoch v. Freeman*, 317 273, 285, 721 A.2d 1019, 1024 (N.J. Super. Ct. App. Div. 1999) ("In general, a designated beneficiary has a vested property right which can be divested only by a change of beneficiary in the mode and manner prescribed by the [policy]." (internal quotation marks and citation omitted)).

The presumption is not irrebuttable, however. As set forth above, the "felonious and intentional killing of the decedent [r]evokes any revocable [d]isposition or appointment of property made by the decedent to the killer in a governing instrument." Tenn. Code Ann. § 30-1-106(c)(1)(A). The statute further establishes that "[a] judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent is conclusive evidence that the individual is the decedent's killer for purposes of this section." *Id.* § 30-1-106(g). Such a conviction is not the only means of establishing that the beneficiary is the decedent's killer, however. Tennessee courts recognize that even an acquittal of criminal charges is not *res judicata* in the context of a civil suit, because "the suits are not between the same parties, and the rules of evidence are different. In the criminal case the jury must believe that [the beneficiary] was guilty of murder beyond a reasonable doubt, whereas in the civil case the preponderance of evidence rule prevails." *Jamison v. Metro. Life Ins. Co.*, 145 S.W.2d 553, 557 (Tenn. Ct. App. 1940).

There is no dispute that the Prudential policy validly designates Ellen Reed as the beneficiary of the Death Benefit. Because they are challenging Ellen Reed's right to recover as the named beneficiary of the decedent's life insurance policy, Mr. and Mrs. Reed have the burden to establish by a preponderance of the evidence that Ellen Reed "feloniously and intentionally" killed her husband, the decedent. In support of her Motion for Summary Judgment, Ellen Reed points to evidence in the record that supports a conclusion that Mr. and Mrs. Reed cannot meet their evidentiary burden. And, in fact, she appears to be correct in asserting that there is no *direct* evidence in the record that she intentionally killed her husband.

In response, Mr. and Mrs. Reed have introduced a substantial quantity of *circumstantial* evidence implicating Ellen Reed. The entire sequence of the events that took place during the night and early morning of March 5–6, 2018 is suspicious. Ellen Reed purports to have no recollection of anything that took place during the two-hour window between 11:00 p.m. on March 5, when she and her husband left their house in her Jeep, and 1:00 a.m. on March 6, when she woke up on the roadway near where her Jeep went into the river. Her Jeep was recovered from the water with the back hatch open and all of the windows down, the passenger seat pushed back, one of the back seats folded down, and her husband's phone in the glove compartment, but, even though Ellen Reed herself was wet, her personal effects were on the river bank and dry. Particularly concerning is the fact that Jesse Reed's body was eventually recovered approximately one-half mile *upstream* from where the Jeep went into the water. Moreover, although Ellen Reed is admittedly the last person who saw Jesse alive, she has not explained the "[b]lunt force injuries" that contributed to his death by drowning (Doc. No. 45-2, at 1), and she gave inconsistent statements about whether he was injured and in the vehicle when it went into the water. There is evidence that Ellen and Jesse frequently fought and that they fought the night Jesse Reed disappeared. There is evidence

that Ellen Reed lied about whether Jesse Reed was driving her car the entire weekend. Further, Ellen Reed invoked her Fifth Amendment privilege against self-incrimination in response to all discovery directed to her in this litigation.

Under Tennessee law, "the trier of fact may draw a negative inference from a party's invocation of the Fifth Amendment privilege in a civil case only when there is independent evidence of the fact to which a party refuses to answer by invoking his or her Fifth Amendment privilege." *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 506 (Tenn. 2012). In this case, such evidence exists, and a reasonable finder of fact could—but is not required to—draw an adverse inference against Ellen Reed from her invocation of the Fifth Amendment.

The court finds, in sum, that a reasonable finder of fact, viewing all of the facts and drawing all reasonable inferences in favor of Mr. and Mrs. Reed as the non-movants, could find that Ellen Reed feloniously and intentionally killed Jesse Reed and that she is barred by operation of § 30-1-106 from recovering the Death Benefit. Material factual disputes preclude the granting of summary judgment in this matter.

Insofar as Mr. and Mrs. Reed assert, pursuant to Federal Rule of Civil Procedure 56(f), that the court should grant them summary judgment, the court declines the invitation. Material factual disputes, at this juncture, preclude summary judgment for either party.

## V.    CONCLUSION

For the reasons set forth herein, Ellen Reed's Motion for Summary Judgment will be denied, and Mr. and Mrs. Reed's informal request for summary judgment under Rule 56(f) will also be denied. An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge